**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| KEVIN WALSH, | ) Case No. |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| INTERCEPT PHARMACEUTICALS, INC., JEROME DURSO, PAOLO FUNDARÒ, MARK PRUZANSKI, SRINIVAS AKKARAJU, LUCA BENATTI, DANIEL BRADBURY, KEITH GOTTESDIENER, NANCY MILLER-RICH, DAGMAR ROSA-BJORKESON, GINO SANTINI, and GLENN SBLENDORIO, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Kevin Walsh ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Intercept Pharmaceuticals, Inc. ("Intercept" or the "Company") and its corporate directors for violating Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the proposed acquisition of the Company by Alfasigma S.p.A. ("Alfasigma").[1]

---

[1] This proposed acquisition of the Company described will be referred to herein as the "Proposed Transaction."

2.	On September 26, 2023, Intercept entered into an Agreement and Plan of Merger ("Merger Agreement") with Alfasigma and Alfasigma's wholly owned subsidiary, Interstellar Acquisition Inc. ("Purchaser"). The Merger Agreement provides that Alfasigma will acquire Intercept in exchange for $19.00 in cash per share of Intercept common stock, via a tender offer (the "Tender Offer").[2]

3.	The Company's corporate directors subsequently authorized the October 10, 2023, filing of a materially incomplete and misleading 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") with the SEC. The Solicitation Statement, which recommends that Company stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Solicitation Statement in violation of the Exchange Act.

4.	It is imperative that the material information omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the forthcoming Tender Offer deadline, so that they can properly exercise their rights, among other things.[3]

5.	For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] Purchaser commenced the Tender Offer on October 11, 2023.

[3] The Tender Offer is currently scheduled to expire at one minute past 11:59 P.M., Eastern Time, on November 7, 2023.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

9. Plaintiff is, and has been at all times relevant hereto, the owner of shares of Intercept common stock.

10. Defendant Intercept is a Delaware corporation with its principal executive offices located at 305 Madison Avenue, Morristown, New Jersey 07960. Intercept's shares trade on the Nasdaq Global Select Market under the ticker symbol "ICPT." Intercept is a biopharmaceutical company focused on the development and commercialization of novel therapeutics to treat rare and serious liver diseases, including primary biliary cholangitis ("PBC") and severe alcohol-associated hepatitis. The Company's marketed product, Ocaliva (obeticholic acid ("OCA")), is a farnesoid X receptor agonist approved in the U.S., United Kingdom, European Union and several other jurisdictions for the treatment of PBC in combination with ursodeoxycholic acid ("UDCA") in adults with an inadequate response to UDCA or as monotherapy in adults unable to tolerate UDCA. On June 22, 2023, the Company received a response letter from the U.S. Food and Drug

Administration determining that the Company's new drug application for OCA as a treatment for pre-cirrhotic liver fibrosis due to nonalcoholic steatohepatitis ("NASH") could not be approved in its current form. As a result, Intercept discontinued all NASH-related investment. The Company is currently developing a fixed dose combination product of OCA and bezafibrate (the "Combination Product").

11. Defendant Jerome Durso is and has been President, Chief Executive Officer and a director of the Company at all times relevant hereto.

12. Defendant Paolo Fundarò is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

13. Defendant Mark Pruzanski is and has been a director of the Company at all times relevant hereto.

14. Defendant Srinivas Akkaraju is and has been a director of the Company at all times relevant hereto.

15. Defendant Luca Benatti is and has been a director of the Company at all times relevant hereto.

16. Defendant Daniel Bradbury is and has been a director of the Company at all times relevant hereto.

17. Defendant Keith Gottesdiener is and has been a director of the Company at all times relevant hereto.

18. Defendant Nancy Miller-Rich is and has been a director of the Company at all times relevant hereto.

19. Defendant Dagmar Rosa-Bjorkeson is and has been a director of the Company at all times relevant hereto.

20. Defendant Gino Santini is and has been Lead Independent Director of the Company at all times relevant hereto.

21. Defendant Glenn Sblendorio is and has been a director of the Company at all times relevant hereto.

22. Defendants identified in paragraphs 11-21 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

23. On September 26, 2023, Alfasigma and the Company jointly announced in relevant part:

> **Bologna, Italy & Morristown, N.J., U.S. – September 26, 2023** – Alfasigma S.p.A ("Alfasigma"), one of Italy's leading pharmaceutical companies, and Intercept Pharmaceuticals, Inc. (Nasdaq: ICPT, "Intercept"), a leading biopharmaceutical company in rare and serious liver diseases, today announced that they have entered into a definitive merger agreement under which Alfasigma has agreed to acquire Intercept for $19.00 per share in cash. The anticipated transaction will materially expand Alfasigma's gastrointestinal and hepatology portfolio and its presence in the U.S. market.
>
> Intercept's lead medicine is Ocaliva® (obeticholic acid), a farnesoid X receptor agonist approved in the United States and several other jurisdictions for the treatment of primary biliary cholangitis ("PBC") in combination with ursodeoxycholic acid ("UDCA") in adults with an inadequate response to UDCA, or as monotherapy in adults unable to tolerate UDCA. Ocaliva® is the only approved second-line therapy for PBC and has experienced double-digit year-over-year growth supported by an experienced specialty sales force and strong prescriber base. Intercept also benefits from a broader clinical development pipeline anchored by a novel fixed-dose combination of obeticholic acid and bezafibrate in phase 2 trials for PBC.
>
> **Mr. Stefano Golinelli, Chairman of Alfasigma Board, declared:** *"Today's proposed acquisition is aligned with our strategy to build presence in the U.S. market, with a focus in our core gastroenterological area while adding another important asset to our innovation pipeline. This acquisition will contribute to the ambitious growth strategy designed for our company."*

**Mr. Francesco Balestrieri, Chief Executive Officer of Alfasigma, said:** *"The acquisition of Intercept marks another important milestone in Alfasigma's growth path, particularly with regard to the U.S. market in which we have significant development objectives. Intercept represents a compelling fit with Alfasigma's core business areas of gastroenterology and hepatology, and we believe that the transaction represents a transformational opportunity for both companies. We are excited to welcome Intercept employees and look forward to working together as we invest in the company to realize the full potential, to the benefit of patients."*

**Mr. Jerry Durso, President and Chief Executive Officer of Intercept, commented:** *"We are pleased to announce this transaction with Alfasigma, which delivers significant value to shareholders. Importantly, it recognizes the value of our portfolio, R&D and commercial capabilities and our talented people across the organization. The team at Intercept is proud of the breakthrough, innovative work that we have done as a pioneer, delivering life-saving medicine to patients with rare and serious liver diseases such as PBC."*

**Transaction Terms**

Under the terms of the merger agreement, Alfasigma has agreed to commence a cash tender offer to acquire all issued and outstanding shares of Intercept common stock for US$19.00 per share in cash. The purchase price represents a premium of 82% to Intercept's closing stock price on September 25, 2023.

The transaction will be fully financed by Alfasigma's existing cash on hand and existing corporate credit facilities. The members of the Board of Directors of Intercept participating in the decision have unanimously approved the transaction.

The closing of the tender offer will be subject to customary conditions, including the tender of shares which represent at least a majority of the total number of Intercept's outstanding shares of common stock and the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. Upon successful completion of the tender offer, Alfasigma would acquire all shares not acquired in the tender offer through a second-step merger for the same consideration that the tendering stockholders will receive in the tender offer.

It is anticipated the transaction will close by the end of 2023. Upon completion of the transaction, Intercept's common stock will no longer be publicly listed.

**Advisors**

Barclays and Centerview Partners are serving as financial advisors to Intercept. Skadden, Arps, Slate, Meagher & Flom LLP are serving as legal counsel to Intercept. PJT Partners is acting as exclusive financial advisor to Alfasigma and

Sullivan & Cromwell LLP and Chiomenti Studio Legale as legal counsel to Alfasigma.

**The Materially Incomplete and Misleading Solicitation Statement**

24. The Board caused to be filed the materially incomplete and misleading Solicitation Statement with the SEC on October 11, 2023. The Solicitation Statement, which recommends that Intercept stockholders tender their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial forecasts; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisors, Barclays Capital Inc. ("Barclays") and Centerview Partners LLC ("Centerview"); and (c) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts*

25. The Solicitation Statement fails to disclose material information concerning the financial forecasts for Intercept, including the assumptions underlying the Company's Case A, Case B, Case C, and Case D Projections. This omitted material information includes the assumptions made "market conditions for Ocaliva for PBC, the potential competition from existing therapies and companies developing therapies to treat PBC and the probability of success for the Combination Product."[4]

---

[4] Solicitation Statement at 27. The Solicitation Statement similarly fails to disclose the assumptions underlying the Company's September Projections, including with respect to "changes in the treatment rate growth assumptions for PBC and new patient share assumptions of Ocaliva and the Combination Product[.]" *Id.* at 16.

26. The Solicitation Statement similarly fails to disclose all line items underlying NOPAT and Unlevered Free Cash Flow respect to each of the Company's Case A through Case D projections and September Projections.

*Material Misrepresentations and/or Omissions Concerning Barclays' and Centerview's Financial Analyses*

27. The Solicitation Statement fails to disclose material information concerning Barclays' and Centerview's financial analyses.

28. With respect to the *Discounted Cash Flow Analysis* performed by Barclays, the Solicitation Statement fails to disclose: (a) the terminal values for the Company; and (b) Intercept's fully diluted outstanding shares.

29. With respect to the *Selected Comparable Company Analysis* and *Selected Precedent Transactions Analysis* performed by Barclays, the Solicitation Statement fails to disclose the respective individual financial metrics for each of the companies and transactions analyzed by the financial advisor.

30. With respect to the *Equity Research Targets Analysis* performed by Barclays, the Solicitation Statement fails to disclose the individual price targets observed and their respective sources.

31. With respect to the *Transaction Premium Analysis* performed by Barclays, the Solicitation Statement fails to disclose the transactions Barclays observed and their respective premia.

32. With respect to the *Discounted Cash Flow Analysis* performed by Centerview, the Solicitation Statement fails to disclose: (a) the terminal values for the Company; and (b) Intercept's fully diluted outstanding shares.

33. With respect to *Selected Public Company Analysis* and *Selected Precedent Transaction Analysis* performed by Centerview, the Solicitation Statement fails to disclose the respective individual financial metrics for each of the companies and transactions analyzed by the financial advisor.

34. With respect to the *Analyst Price Target Analysis* performed by Centerview, the Solicitation Statement fails to disclose the individual price targets observed and their respective sources.

*Material Misrepresentations and/or Omissions Concerning Potential Conflicts of Interest Affecting Company Insiders*

35. The Solicitation Statement fails to disclose material information concerning potential conflicts of interest faced by Company insiders, including whether any of Alfasigma's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

36. The omission of the above-referenced information renders statements in the "Certain Financial Projections," "Opinion of Intercept's Financial Advisors," "Background and of the Offer and the Merger," and "Future Employee Arrangements" sections of the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act.

37. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of Intercept will be unable to make a sufficiently informed decision in connection with the Tender Offer and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

## COUNT I

### Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9 Promulgated Thereunder

38. Plaintiff repeats all previous allegations as if set forth in full.

39. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting Intercept stockholders to tender their shares in the Tender Offer.

40. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

41. Section 14(d)(4) of the Exchange Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

42. SEC Rule 14d-9 sets forth, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

43. Item 8 of Schedule 14D-9 requires a company's directors to "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

44. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Solicitation Statement false and/or misleading.

45. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had

access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

46. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and the other stockholders of Intercept, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

47. Plaintiff repeats all previous allegations as if set forth in full.

48. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

49. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement to Intercept stockholders in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. Specifically, the Solicitation Statement misrepresented and/or omitted material facts concerning the financial forecasts for the Company,

Barclays's financial analyses, and potential conflicts of interest faced by Barclays and Company insiders.

50. Defendants knew that Plaintiff would rely upon their statements in the Solicitation Statement in determining whether to tender his shares pursuant to the Tender Offer.

51. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

### COUNT III

**Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

52. Plaintiff repeats all previous allegations as if set forth in full.

53. The Individual Defendants acted as controlling persons of Intercept within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Intercept, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Solicitation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Solicitation Statement.

56. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), Section 14(d) and SEC Rule 14d-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Intercept stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

  A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

  B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

  D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E.  Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated October 13, 2023       **LONG LAW, LLC**

             By: */s/ Brian D. Long*
                Brian D. Long (#4347)
                3828 Kennett Pike, Suite 208
                Wilmington, DE 19807
                Telephone: (302) 729-9100
                Email: BDLong@LongLawDE.com

                *Attorneys for Plaintiff*